UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOYCE JOHNSON-RICHARDSON | CIVIL ACTION |
| VERSUS | NO:      12-0140 |
| TANGIPAHOA PARISH SCHOOL BOARD | UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY |

**ORDER & REASONS**

Before the Court is Defendant, Tangipahoa Parish School Board's ("Defendant") **Motion for Summary Judgment (R. Doc. 108)**[1] pursuant to Federal Rules of Civil Procedure ("Rule") 56, dismissing Plaintiff, Joyce Johnson-Richardson's ("Plaintiff") Title VII, 42 U.S.C. § 2000e, *et seq.*, retaliatory non-hiring claims alleged in Counts I through IV, on the grounds that Plaintiff has failed to provide any admissible evidence in support of the necessary elements of her retaliation claim. *See* R. Doc. 108-1, p. 1.[2] This Motion was opposed. *See* R. Doc. 124.[3] It was heard on the briefs on February 12, 2014. *See* R. Doc. R. Doc. 113.

**I.    Background**

---

[1] The Magistrate Judge is acting upon consent of the parties, under 28 U.S.C. § 636(c). R. Doc. 33 and 35.

[2] Plaintiff's complaint asserted claims of harassment as well as retaliation, however, this Court previously dismissed these claims in its order and reasons on Defendant's Motion to Dismiss. *See* R. Doc. 76. As such, Plaintiff's only remaining claim is retaliation.

[3] Plaintiff failed to timely oppose the motion for summary judgment, but requested an extension to do so, which was granted by this Court. *See* R. Doc. 111. Plaintiff originally opposed the motion on February 13, 2014. *See* R. Doc. 118. Then, Plaintiff sought to file an amended opposition pleading, which was also granted by this Court. *See* R. Doc. 119, 122, and 124.

Plaintiff, Joyce Johnson Richardson, ("Plaintiff") brings this action pursuant to 42 U.S.C. 2000e-5, the Equal Employment Opportunities Commission (EEOC) enforcement provision for Title VII Civil Rights disputes, against Defendant, Tangipahoa Parish School Board ("Board"). *See* R. Doc. 1. Plaintiff, an African American female with allegedly thirty-three-years of experience as a special education teacher, claims that she was discriminated against and denied the opportunity of employment by Defendant, due to her husband's political involvement in the Tangipahoa Parish School Board, the African American community, and more specifically, her participation in the ongoing desegregation case, *Moore v. Tangipahoa Parish School Board,* No. 65-15556. *See* R. Doc. R. Doc. 76, p. 2.

Plaintiff alleges that she was employed by Defendant, at Roseland Elementary School, as a special education teacher from 1982 until she retired on June 3, 2006. *Id.*[4] Four years after she retired she applied for two full-time, elementary grade and/or special education teaching positions on January 21, 2010,[5] and February 1, 2011, but was denied these opportunities, although she was qualified. *Id.* Defendant allegedly informed Plaintiff that due to her retirement, she was only able to be rehired "if there was a determination of critical shortage in her area of certification in the District" by the Superintendent, as mandated by the Defendant, Tangipahoa Parish School Board's Policy GBD. *Id.*[6] Because the Superintendent had not certified that there was an area of critical need for full-time teachers, and because Plaintiff applied mid-year for a position, Defendant argues that it could not have hired Plaintiff. *See* R.

---

[4]*See* R. Doc. 108-5, p. 1 (Plaintiff's Retirement Notice).

[5]*See id.,* at p. 2. Attached to Defendant's Motion for Summary Judgment is Plaintiff's first application for rehire, which is dated January 21, 2010, and not January 9, 2010, as she alleges in her complaint. The February 2011 application that was allegedly filled out was not attached as a part of the record, therefore the Court shall only use the date alleged by Plaintiff as reference.

[6]*See* R. Doc. 108-5, pp. 8, 31, 35-40 (Tangipahoa Parish School Board Meeting Minutes 10/6/09 & 10/5/10); *see also* La. Rev. Stat. §11:710 (Employment of Retirees).

Doc. 108-1, p. 3.[7] Although dispelled by the Plaintiff, the Defendant allegedly offered Plaintiff a position as a substitute teacher, but she did not take it. *Id.*[8]

Thereafter, Plaintiff filed two EEOC charges regarding the denial of her applications. *See* R. Doc. 108-1, p. 3. The first charge was filed in July 2010, and the second, on August 30, 2011. *See* R. Doc. 41-1, p. 25-28.[9] There is no evidence in the record as to how the July 2010 charge was resolved, however, the August 30, 2011, intake questionnaire and charge are provided. *See* R. Doc. 41-1, p. 25-28, 32.

In the August 30, 2011, EEOC charge, Plaintiff alleges that she was retaliated against due to "her husband's involvement in politics, the 'African American community,' and in the 'Joyce Marie [desegregation] court case'." *See id.*, at p. 26.[10] She alleges that the Human Resources Department hired a non-educator, instead of her, to teach kindergarten at Roseland Elementary. *Id.* She further alleges that between August 2010 and May 2011, she was retaliated against because of her husband's political

---

[7] Defendant contends that on October 5, 2010, its Board approved revisions to the policy involving retired teachers, in compliance with "new legal restrictions for the hiring of retired teachers." *See* R. Doc. 108-1, p. 3-4, n. 11 (citing LSA-R.S. §11:710(A)(1) and (F), effective July 1, 2010 to June 30, 2011; LSA-R.S. §11:710(A)(1) and (F) effective July 1, 2011 to June 30, 2012, with identical relevant provisions.) Under this law, as of July 1, 2010, Defendant argues that a public school board could rehire a retired teacher only in a "critical shortage area" which was defined "as any shortage of certified teachers existing in a subject area that has been certified by both the Superintendent and personnel director to the Louisiana Board of Elementary and Secondary Educations (BESE) and the Teachers Retirement System of Louisiana. *See id.*, at p. 4. Defendant further argues that prior to making such a certification for critical shortage of any full-time teaching position, the School Board would be required to advertise in the Board's official journal, on two (2) separate occasions, notice that a shortage existed and the position to be filled, with a requirement that the Board hire a certified non-retired teacher over a certified retired teacher, unless less than three (3) teachers applied. *See id.,* citing n.10.

[8]*See also* R. Doc. 108-4, p. 25 (Joyce Johnson Richardson's Deposition, p. 95). In Plaintiff's deposition, she denies ever being offered such an employment position, stating that had it been offered she would not have had a reason to decline a long-term substitute position.

[9]*See* R. Doc. 41-1, p. 32 (Notice of Charge of Discrimination Sent to Defendant, September 15, 2011)). The 2010 Charge is not included in the record.

[10]Plaintiff states in her deposition that she was told that because her husband was a former board member who had allegedly "revealed some things that are done in the parish" the Defendant's were retaliating against her. She cannot remember who told her this or "all the specifics" but stated that another teacher, Patricia Morris, allegedly heard from another teacher "Miss O'Banion" some kind of information which led Plaintiff to believe that the Defendant did not want to rehire her due to her husband's prior involvement with the Board. *See* R. Doc. 108-4, p. 39-40 (Joyce Johnson Richardson, Deposition Part I, p. 149, 153).

activity, as her application for employment was again ignored when a white female teacher was hired for a position for which Plaintiff believed she was qualified. *Id.* She also alleges that she believed Defendant's non-hiring of her was discriminatory because no other retired teachers "seemed to have difficulty returning to work after retirement," as she contends that "some of them had been working for years" or had been called from home to fill positions, without a problem. *Id.* She also states that her emails, and phone calls regarding any available positions went unanswered. *Id.*

Prior to the August 30, 2011, charge being filed, Plaintiff allegedly obtained legal representation in the instant matter, and became a party in the ongoing desegregation case against Defendant, *Moore v. Tangipahoa Parish School Board,* No. 65-15556. *See* R. Doc. 108-6, p. 32-38. In *Moore,* the Court issued a desegregation decree which provided that Defendant "should attain a 'black/white ratio of teachers equal to the black/white ratio of students and, as a remedial tool to achieve that ratio. . . and [. . .] if there is a qualified black applicant for a vacant teaching position, [Defendant] must hire that black applicant'." *Id. See also,* No. 65-15556, R. Doc. 876-3; R. Doc. 956. Defendant contends however, that the desegregation decree did not address the retiree "critical shortage" issue which it contends prevented it from hiring Plaintiff.

Shortly after counsel for plaintiffs in the desegregation case and the Defendant engaged in negotiations to resolve the rehiring issue, the presiding District Judge, Ivan L.R. Lemelle, on August 31, 2011, issued an Order that Defendant, the Tangipahoa Parish School Board, was required to extend an offer of employment to Plaintiff upon the occurrence of a vacancy for which she was qualified, "with said Order superseding state laws that had limited – and that otherwise would have continued to limit – the Board's ability to rehire her." *Id. See also* 65-15556, R. Doc. 956, p. 3.  Neither Defendants nor this Court's Order advises whether the vacancy position was for full-time or part-time employment.

As a result of this Court's Order, Plaintiff was allegedly offered, and accepted a full-time

"teaching position" on September 6, 2011, at Neesom Middle School. *See* R. Doc. 41-1, p. 3*;* R. Doc. 1, p. 1-2; R. Doc. 108-1, p. 5.  On October 6, 2011, while Plaintiff was working at Neesom Middle School, Plaintiff was allegedly contacted and interviewed by the EEOC investigator assigned to investigate the retaliatory non-hiring charge she filed on August 30, 2011. *See e.g.,* R. Doc. 76, p. 3.

During the October 6, 2011 interview, Plaintiff reportedly advised the investigator that she had been rehired in accordance with this Court's August 31, 2011 Order, by Tangipahoa Parish School Board, and reported no allegations of retaliatory non-hiring. *Id.*[11] Thereafter, on October 20, 2011 the investigator with the EEOC recommended dismissal of Plaintiff's charge on the grounds of "no cause" noting that since she filed the charge she had been rehired. *Id*. On October 25, 2011, the investigator issued a "Right to Sue Notice" listing the limits of the EEOC's resources, and that the EEOC was unable to conclude that there was a violation of Title VII statutes, and also pointed out that it was not making a finding, as it listed "no cause." *Id.*[12]

Sometime after Plaintiff was rehired pursuant to Judge Lemelle's Order, she was allegedly subjected to supervisory retaliatory harassment by being monitored and observed continuously, and watched by active cameras in her classroom. She filed the instant action on January 18, 2012, asserting two counts of retaliatory non-hiring claims based on her alleged non-hiring of January 2010, and January 2011, even though she was rehired about eight months later as a result of the order in the desegregation

---

[11] Defendants contend that Plaintiff reports no allegations of retaliatory harassment, however, there is no evidence in the record that indicates the substance of the allegations she made to the investigator during the October 2011 interview.  However, after the interview, the Court notices that the EEOC investigator sent a letter on October 25, 2011, dismissing the charge.

[12] The Intake Questionnaire attached to Defendant's Motion for Summary Judgment did not include any documents pertaining to the July 2010 charge Plaintiff allegedly filed with the EEOC. However, in the investigator's memorandum, he notes the July 2010 and August 30, 2011 charges, but does not make it clear as to whether or not he is dismissing both of Plaintiff's previously filed charges in his October 25, 2011 "no cause" letter.

case. *See* R. Doc. 1, p. 1-3.[13] Thereafter, she quit her employment in February 2012, one month after filing the subject suit.

Plaintiff now alleges that she has suffered damages occasioned by Defendant's alleged retaliatory non-hiring and harassment, which was the result of her husband's (who was not employed by the Defendant) political activity against discrimination in Tangipahoa Parish. Plaintiff seeks compensatory damages for lost wages, lost benefits, penalties incurred because she was forced to withdraw from her retirement, pain and suffering, emotional distress damages and attorneys fees incurred by the filing of this action. *Id.* Defendant filed an answer denying liability and asserting various statutory defenses, including the affirmative defense of res judicata. *See* R. Doc. 30.

On August 15, 2013, Defendant's filed a Motion to Dismiss and / or Alternatively for Summary Judgment, seeking dismissal of Plaintiff's retaliatory non-hiring claims asserted in Counts I and II, as well as the supervisory harassment claims asserted in Counts III and IV. *See* R. Doc. 41. On October 9, 2013, this Court issued an Order and Reasons granting Defendant's motion and dismissing with prejudice Plaintiff's claims of supervisory retaliatory harassment claims for failure to exhaust administrative remedies. *See e.g.,* R. Doc. 76. As such, Plaintiff's only remaining claim is retaliatory non-hiring claim. *Id.*

As to the instant motion, Defendant filed a Motion for Summary Judgment on January 28, 2014, seeking an Order from this Court dismissing Plaintiff's Title VII, 42 U.S.C. § 2000e, *et seq.*, retaliatory non-hiring claim. Defendant contends that (1) Johnson fails to advance evidence to support her retaliation claim, (2) that as a retired teacher she was required to meet specific statutory hiring criteria which she did not meet and (3) Johnson's third-party retaliation claim fails because it does not include a person

---

[13]Although the Court recognizes that Plaintiff has filed two charges, one dated July 2010, No. 461-2010-02018, and one dated August 30, 2011, No. 461-2011-02007, only the substance of the August 30, 2011 charge is provided for the Court's review. The Court was unable to locate any documents substantiating the charge for a "February" non-hire, and for the July 2010 charge.

within the zone of protected interest as required by *Thompson,* see *infra,* and *Burlington,* see *infra. See* R. Doc. 108-1, p. 5. This motion was noticed for submission on February 12, 2014, and heard on the briefs on that date. *See* R. Doc. 113.

## II. Standard of Review

Federal Rule of Civil Procedure ("Rule") 56(a) provides that summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *Lindquist v. City of Pasadena*, *Tex.,* 669 F.3d 225, 233 (5th Cir. Jan. 25, 2012) (quoting *Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010)). A fact is "material" if resolving that fact in favor of one party could affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Poole v. City of Shreveport*, 691 F.3d 624, 626-27 (5th Cir. 2012).

However, the Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. *Anderson,* 477 U.S. at 247–49; *Lindquist,* 2012 WL 208065, at *6 (quoting *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008)). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Id.*, 477 U.S. at 248; *Lindquist*, at *6 (*Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 429–30 (5th Cir. 2009); *see also Francois v. Blandford,* 10-1330, 2010 WL 569684, at *2 (E. D. La. Feb 22, 2012)).

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant

to show that summary judgment should not lie. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with significantly probative evidence, showing specific facts that support there is a genuine issue of material fact for trial. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000); *see also Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.* The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial." *Celotex Corp.*, 477 U.S. at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994). As such, if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir.1995); *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1085 (5th Cir. 1994).

In considering a summary judgment motion, the Court may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Rule 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A court may consider only *admissible evidence* in ruling on a summary judgment motion." *Mersch v. City of Dallas, Texas*, 207 F.3d 732, 734-35 (5th Cir. 2000) (emphasis added). Assertions presented in a statement of contested or uncontested facts "are not competent summary judgment evidence." *Metropolitan Wholesale Supply, Inc. v. M/V Royal Rainbow*, 12 F.3d 58, 61 & n.3 (5th Cir. 1994) (quoting *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993). The Court may consider the admissibility of summary evidence *sua sponte*. *Bellard v. Goutreaux*,

675 F.3d 454, 460-61 (5th Cir. 2012).

The summary judgment standard in an employment discrimination matter is premised upon a burden-shifting analysis from *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and its progeny. Thereunder, the Court must first determine if the plaintiff has established a *prima facie* case of discrimination, sufficient to raise an inference of discrimination. *Id.* at 802; *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002) (finding that in Title VII actions, a *prima facie* standard is used for evidentiary purposes on summary judgment); *Powell v. Rockwell Int'l Corp.*, 788 F.2d 279, 285 (5th Cir. 1986) ("The *McDonnell-Douglas* formula [] is applicable [] in a [] summary judgment situation.").

"Establishment of a *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *see Turner v. Kansas City Southern Railway Co.*, 675 F.3d 887, 893 (5th Cir. 2012) (citing *Burdine*). "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to different factual situations." *McDonnell*, 411 U.S. at 802 n.13. "There is no doubt that vague or conclusory allegations of discrimination or harassment are not enough to survive summary judgment." *Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998).

### III. Analysis

Defendant argues that Plaintiff's retaliatory non-hiring claim should be dismissed as a matter of law because (1) Johnson fails to advance evidence to support her retaliation claim, (2) that as a retired teacher she was required to meet specific statutory hiring criteria which she did not meet and (3) Johnson's third-party retaliation claim fails because it does not include a person within the zone of protected interest as required by *Thompson* and *Burlington*, see *infra*. See R. Doc. 108-1, p. 5.

In opposition, counsel for Plaintiff contends that Plaintiff's instant action not only arises out of

42 U.S.C. § 2000e-3, Title VII's retaliation provision; but also out of an "ongoing 42 U.S.C. § 1983 desegregation [retaliation] action" which is separate from the only remaining action in Plaintiff's instant suit. *See* R. Doc. 124, p1-2. As such, Plaintiff now, more than two years from the inception of this action, contends that she seeks "further relief related to her non-hiring pursuant to Title VII **and** 42 U.S.C. § 1983." *Id.* at p. 4 (emphasis added).

### A.    Plaintiff's Assertion of New Claims from Original Complaint

The Fifth Circuit has held that when a "claim is raised for the first time in response to a summary judgment motion, the district court should construe that claim as a motion to amend the complaint under Federal Rule of Civil Procedure 15(a) . . . this is particularly true where . . . the litigant is *pro se* and has not yet made any amendments to her complaint." *Dixon v. Toyota Motor Credit Corp.*, No. 12-2150, 2013 WL 3776577, at *5, n. 4 (E.D. La. July 17, 2013); citing *Riley v. Sch. Bd. Union Parish*, 379 F. App'x. 335, 341 (5th Cir.2010).

Although Plaintiff was pro se when the complaint was first filed on January 18, 2012, counsel of record, Nelson Taylor, enrolled in this matter on May 7, 2012, and over the span of approximately two years, has never sought leave to amend Plaintiff's originally filed *pro se* complaint. *See* R. Doc. 3. Furthermore, this Court has already issued an Order and Reasons dismissing with prejudice Plaintiff's alleged retaliatory harassment claims, and stating that Plaintiff's only remaining claim was the third-party retaliatory non-hiring claim. *See* R. Doc. 76. Counsel for Plaintiff did not seek leave to amend Plaintiff's complaint to add any new claims under 42 U.S.C. § 1983, until the underlying opposition was filed, on February 13, 2014, more than two years after this action began. *See* R. Doc. 118.[14]

Therefore, the Court finds that any claim Plaintiff's now seek to raise are procedurally improper, would cause an undue delay as the trial is scheduled for March 24-26, 2014, and would cause prejudice,

---

[14]The plaintiff filed an amended opposition to the Defendant's Motion for Summary Judgment. R. Doc. 124.

as the Defendant would have less than one month to prepare for claims it was not prepared to defend, pursuant to Rule 15(a). *See e.g., Morris v. Wyeth, Inc.*, No. 09-0854, 2012 WL 601455, at *4 (W.D. La. Feb. 23, 2012) *aff'd sub nom. Morris v. PLIVA, Inc.*, 713 F.3d 774 (5th Cir. 2013) (the Court found that where Plaintiffs' raised failure to warn claim for the first time in their Opposition to Defendants' Motion to Dismiss, and they were represented with experienced counsel litigating in actions similar to theirs across the country, the motion to amend was improper).

Furthermore, pursuant to Rule 15(a) the Court finds that even if it would entertain Plaintiff's opposition as an amended complaint, the possible claim that she could assert is a *Monell* claim under § 1983, which is futile. The federal statute, 42 U.S.C. §1983, reads in pertinent part:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress. . .

*See* 42 U.S.C. §1983 (1994).

Although the language of §1983 speaks in terms of "person" the United States Supreme Court has held that municipalities and other local governmental entities, such as school boards may be sued under this statute, but "the plaintiff's alleged deprivation of rights must stem from the school board's unconstitutional or illegal policies or decisions." *Perkins v. Iberville Parish Sch. Bd.*, No. 12-0015, 2013 WL 1856519, at *3-4 (M.D. La. May 2, 2013); citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978). *See also Goudeaux v East Baton Rouge Parish Sch. Bd.*, __ Fed. App'x. __, 2013 WL 5514548, at *6 (5th Cir. Oct. 7, 2013); citing *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir.1998). *See also Washington v. E. Baton Rouge Parish Sch. Sys.*, 2011 WL 4914968, at *4; citing *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010);

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) ("[M]unicipal liability under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom.")

Here, neither Plaintiff's complaint or opposition pleadings makes reference to any unconstitutional policy or decision or policy maker for which the Defendant may be liable under the statute. Merely naming the statute is insufficient to state a claim for retaliation under 42 U.S.C. §1983. As such, the Court finds that Plaintiff fails to state a claim upon which relief could be granted, and any purported amended claim would be futile.

### B. Merits of Plaintiff's Opposition

Plaintiff's opposition raises many aspects of the ongoing desegregation case, such as the Defendant's alleged failure to comply with the desegregation decree, or the alleged failure of Defendant to initiate its first desegregation plan, and the issues surrounding the alleged non-hiring of an African American coach at Amite High School, which is currently pending before presiding District Judge Ivan Lemelle, and not the undersigned, and bares no relevance to the instant action. *See* R. Doc. 124, p. 2-5.

Plaintiff also argues that Defendant's assertion that it was unable to extend an offer of employment to her as a retired teacher, until the Court issued an Order superseding state law which limited their ability to rehire her was a misrepresentation of the facts and the law, as she contends that state law never superceded or overruled the desegregation orders of this federal court. *See* R. Doc. 124, p. 7. Furthermore, Plaintiff contends that Defendant misrepresented that no area of critical shortage existed, as she contends that on the record in the proceedings before Judge Lemelle the Defendant conceded that there was an area of critical shortage, and that she would be rehired, without the forfeiture of her retirement benefits. *Id.* at p.8. Lastly, Plaintiff argues that the Defendant is not entitled to summary

judgment, but rather, she – as the nonmovant – should be granted summary judgment. *Id.*[15]

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . [or because he has filed a charge]." *See* 42 U.S.C. § 2000e–3(a); *see also Thompson v. North American Stainless, LP*, 131 S.Ct. 863, 868, 178 L. Ed. 2d 694 (2011). In order to state a claim for retaliation, Plaintiff must allege (1) she was engaged in protected activity, (2) she was subjected to an adverse employment action, and (3) that there was a causal connection between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). A Title VII retaliation claim is also subject to the *McDonnell-Douglas* burden framework. *See Turner*, 2011 WL 901022, at *7; citing *Lemaire v Louisiana Dept. of Transp. & Dev.,* 480 F.3d 383, 393 (5th Cir. 2007).

### 1. Engaged in a Protected Activity

Defendant argues that Plaintiff was not engaged in a protected activity, as her claims of retaliatory non-hiring are based solely on allegations of protected activity by her husband, and although third-party retaliation is cognizable under Title VII, it is inapplicable here. *See* R. Doc. 108-1, p. 8. Specifically, Defendant contends that Plaintiff's claim of third-party retaliatory non-hiring is based on her husband's involvement - not her own- with the ongoing, forty-nine (49) year old discrimination case against the defendant in his role as a member of the NAACP, and not as an employee of the school board. *Id.*

Plaintiff's opposition does not address this argument, but she testified in her deposition that it is her position that her husband's involvement with the NAACP, as well as his former employment with

---

[15] It is unclear whether Plaintiff has attempted to file a cross-motion for summary judgment as she failed to follow the proper procedure to seek summary judgment relief from the Court by complying with the Federal Rules of Civil Procedure or the Local Rules of this Court.

the defendant, which ended some four years before the alleged discrimination, is the basis of her third-party retaliatory non-hiring claim against the Defendant. *See* R. Doc. 108-4, p. 39-40 (Joyce Johnson Richardson, Deposition Part I, p. 149, 153).

Protected activity "is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Webber v. Christus Schumpert Heath Sys.*, No. 10-1177, 2011 WL 3880398 (W.D. La. Sept. 2, 2011) *aff'd sub nom*, 475 Fed. App'x 512 (5th Cir. 2012); citing *Ackel v. Nat. Communications, Inc.*, 339 F.3d 376, 385 (5th Cir.2003). *See* 42 U.S.C. § 2000e–3(a); *Douglas v. DynDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998).

Yet, "[n]ot every complaint garners its author protection under Title VII" *Id. See also Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C.Cir. 2006), citing *Pope v. ESA Serv's, Inc.*, 406 F.3d 1001, 1010 (8th Cir.2005) (stating that commenting about absence of black employees, without alleging discrimination, was insufficient to qualify as protected activity). "While no magic words are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition." *Broderick*, 437 F.3d at 1232 (internal quotations omitted). However, the fact that a Title VII complaint is ultimately proven fruitless is not the end of the inquiry; to satisfy the standard, Plaintiff must demonstrate only a "reasonable belief" that Defendant was engaged in unlawful employment practices. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 348 (5th Cir. 2007).

Title VII's anti-retaliation provision "must be construed to cover a broad range of employer conduct," as it "prohibits an employer from discriminating against any of his **employees** for engaging in protected conduct without specifying the employer acts are prohibited." *Burlington N. & S.F.R. Co. v. White,* 548 U.S. 53, 62 (2006) (quoting 42 U.S.C. § 2000e-2(a))(internal quotations omitted)(emphasis added). Therefore, Title VII's anti-retaliation provision prohibits any employer action that "might well

have dissuaded a reasonable worker from making or supporting a charge of discrimination," but it does not extend so far as to protect any conduct unrelated to employment. *Id.*

The United States Supreme Court, in recent years, extended the reach of this provision in *Thompson v. N. Am. Stainless, LP,* – U.S. –, 131 S.Ct. 863, 178 L.Ed.2d 694 (2011)*.* In *Thompson,* the Supreme Court held "that an **employee** could bring a Title VII claim on the basis of retaliation that he suffered in response to protected activity engaged in by a **co-worker** who was a **close family member**." *Id. See also Zamora v. City of Houston*, 425 F.App'x 314, 316 (5th Cir. 2011) (emphasis added). In *Thompson,* the plaintiff and his fiancée were both employed by the same employer. After his fiancee filed an EEOC complaint alleging sex discrimination, the employer terminated Thompson's employment several weeks later. *Id.* at 867, 131 S.Ct. 863.

In determining whether or not the plaintiff had standing to sue under Title VII, the Court cited to *Burlington,* and stated "that Title VII incorporates a zone of interest test, which denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Thompson,* 131 S.Ct. at 869-70; *see also Underwood v. Dept' of Fin. Servs. Fla.,* No. 12-14711, 518 Fed. App'x. 637, 2013 WL 1760623, at *11-12 (11th Cir. Apr. 25, 2013). As such, the Court advised that "it is obvious that a reasonable worker might be dissuaded from engaging in a protected activity if she knew that her fiancee would be fired." *Zamora,* 425 F. App'x. at 316, n. 3 ("explaining that a 'plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination'") (citing *Thompson,* at 868).[16]

---

[16]In *Thompson,* the Supreme Court further stated that "there is no textual basis for making an exception to the anti-retaliation statute for third-party reprisals," and further opined that "firing a close family member will almost always meet the *Burlington* standard, and inflicting a milder reprisal on a mere acquaintance will almost never do so." *Thompson*, at 868; *Zamora*, 425 F. App'x. at 316.

15

Ultimately, the Court concluded that Thompson fell within the zone of interests protected by Title VII, i.e., he was a person aggrieved with standing to sue because "(1) he was an employee of [the defendant], and the purpose of Title VII is to protect employees from their employers' actions, and (2) he was not an accidental victim of the retaliation, as 'injuring him was the employer's intended means of harming [his fiancee].'" 131 S.Ct. at 870. Therefore, the Court found that the act of "hurting Thompson was the unlawful act by which the employer punished his fiancee." *Id. See also Underwood v. Dep't of Fin. Servs. State of Florida*, 518 F. App'x 637, 642 (11th Cir. 2013) *cert. denied*, 134 S. Ct. 685, 187 L. Ed. 2d 551 (U.S. 2013).

Although the Court declined to define the parameters of third-party reprisals that can be brought under Title VII's anti-retaliation provision, it did ultimately hold that because Thompson's discharge could reasonably dissuade his fiancee from making or supporting the charge of discrimination if she knew that he could be fired from his employer, he had standing to assert a claim of retaliation because he was a "person aggrieved" under Title VII's provision. *Id. citing* 42 U.S.C. § 2000e-5; citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Trafficante v. Metropolitan Life Ins. Co*., 409 U.S. 205 (1972). *See E.E.O.C. v. Wal-Mart Associates, Inc.,* 2011 WL 8076831 at *5-6 (D.N.M. Oct. 26, 2011). *See also Hernandez v. Yellow Transp., Inc*., 641 F.3d 118, 129 (5th Cir. 2011) *opinion withdrawn and superseded on reh'g*, 670 F.3d 644 (5th Cir. 2012). The Court also stated that the "firing of a close family member will almost always meet the [broad sweep of] the *Burlington* [and now the *Thompson*] standard, and inflicting a milder reprisal on a mere acquaintance will almost never do so." *Thompson,* 131 S.Ct. at 868; *Burlington,* 548 U.S. 53; *see also Underwood,* 518 Fed. App'x. at 642.

Since *Thompson,* Title VII's anti-retaliation provision has been expanded. *See e.g., Wal-Mart Associates, Inc.,* 2011 WL 8076831 at *6-7 (the Court held that two sibling, non-employee applicants of Wal-Mart, had standing to sue Wal-Mart under Title VII's anti-retaliation provision, for failing to hire

them in retaliation for their mother's protected activity, the filing of a charge of discrimination, who was a Wal-Mart employee at the time of their application); *see also McGhee v. Healthcare Serv.'s Group., Inc.,* 2011 WL 818662 (N.D. Fla. March 2, 2011) (the Court denied a motion to dismiss a retaliation claim brought by a husband who alleged that he was fired in retaliation for his wife's protected activity - i.e., her sexual harassment claim- although the husband was employed by a healthcare supplier who had a contract with his wife's employer, a licensed vendor of the supplier). Therefore, Title VII's anti-retaliation provision has been interpreted to extend to non-employee applicants who may be retaliated against based on the protected conduct of a close family member or relative, who is, or was employed by, or has a contractual relationship with the employer at the time of the protected activity. *See id.*

However, in all of these cases, either the person engaged in the protected activity or the aggrieved person, was an employee of some sort – whether that be an employee in a contractual relationship, or an employee of a subdivision of a related agency – at the time of the unlawful employment practice, or retaliation, by the employer against the third-party. *See e.g., Thompson,* 131 S.Ct. at 868; *McGhee* 2011 WL 818662; *Wal-Mart,* 2011 WL 8076831 at *6-7. The key that either the aggrieved party or the party engaged in a protected activity be either an employee of, or in a contractual relationship with the employer is necessary to have standing to assert a successful retaliation claim, as a "plaintiff must show that the employer could reasonably have understood that the plaintiff [the aggrieved party]'s opposition was directed at conduct prohibited by Title VII." *Veeramathu Rajaravivarma v. Bd. of Trs. for the Conn. State Univ. Sys.,* 862 F. Supp. 2d 127, 165-66 (D. Conn. Mar. 26, 2012); citing *Chacko v. Connecticut,* No. 3:07-cv-1120, 2010 WL 1330861, at *12 (D. Conn. Mar. 30, 2010).

For example, in *Underwood v. Dep't of Fin. Servs. Fla.,* the plaintiff, a former employee of the defendant, the Department of Financial Services for the State of Florida ("the Department") appealed the granting of the Department's motion for summary judgment on the grounds that the plain language of

Title VII and the Supreme Court's decision in *Thompson* permitted him to file a retaliation claim against the Department for firing him because his wife had filed a discrimination charge against a different employer. *Underwood*, 518 F. App'x 637. Plaintiff alleged that during his employment with the Department, his wife filed a gender, age and retaliation action against her employer, the Florida Department of Health. *Id.* at 638. Plaintiff contended that approximately one month before his wife's discrimination action settled, he was terminated.

Plaintiff alleged that although he and his wife were not co-workers, or employed by the same employer, under *Thompson*, his employer could be liable for the adverse action that he suffered - i.e. his termination - because "he fell within the 'zone of interests' that Title VII is intended to protect based on his wife's protected activity." *Underwood*, 518 Fed. App'x at 639. He argued that similar to the plaintiff in *Thompson*, and under the "broad sweep" of *Burlington*, 548 U.S. 3 (2006), he was an intended target of the Department's actions, as he, as the husband of someone who complained about discrimination was a person "aggrieved with standing to bring a retaliation claim." *Id.* He also argued, that contrary to the Department's argument, Thompson does not "require a showing that 'an employee of the defendant has engaged in protected activity.'" Instead, Title VII's anti-retaliation provision prohibits any employer action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* Therefore, he contended that third-party reprisals, like his termination based on his wife's conduct, were recognized by *Thompson*.

The Eleventh Circuit however, did not address whether or not plaintiff had standing to sue, as was decided by the Court in *Thompson,* because it found, like the lower court, that Plaintiff could not show that the Department had engaged in an "unlawful employment action." *Id.* at 642. The Court held that the district court did not err in granting summary judgment, because it found that Title VII's "anti-retaliation provision did not apply [to the Plaintiff] because [the Department] did not retaliate against one

18

of **its own employees** based on **that employee's protected conduct**," which was distinguishable from *Thompson. Id.* at 642-43. (emphasis added). The Court further stated, that "[i]n *Thompson,* the plaintiff alleged that [his employer] fired him in retaliation against his fiancee, [ ] who was his coworker and who had engaged in a protected act by filing a discrimination charge against [the employer]." *Id.* at 643; citing *Thompson,* 562 U.S. ___, 131 S.Ct. at 867. Thus, the third-party retaliation claim was that the "employer retaliated against its own employee [ . . . ] based on her protected act" by firing another employee with whom she had a close personal relationship, which was not the same as plaintiff's claim, as he "asserted that his employer retaliated against him, not his wife, and **he concedes that he did not engage in the protected conduct.**" *Id.* Therefore, because the plaintiff did not allege that the Department "fired him as a means of harming or retaliating against [his wife], the individual who engaged in protected conduct" he did not have a Title VII claim. *Id. See also Thompson,* 131 S.Ct. at 867-70.

The Court went on to state that even though "Title VII"s retaliation clause covers a broad range of employer conduct, the plain language of § 2000e–3(a) requires that the retaliatory action must be against <u>**an employee who engaged in protected conduct.**</u>" *Id.* Thus, under *Thompson,* "an employer can [unlawfully] retaliate against such an employee by firing someone with whom the employee has a close personal relationship. *Id. citing Thompson*, 131 S.Ct. at 867-68.

However, because the plaintiff did not allege that his employer, the Department, retaliated against the same employee who filed the underlying discrimination charge, his wife, the plaintiff "could not have asserted such a claim because [his wife] was not an [employee of the department]." *Id.* Furthermore, because the plaintiff failed to identify "any binding authority suggesting that, under Title VII, an employer can unlawfully retaliate against one of its own employees, who did not engage in protected conduct, because that employee's spouse, who was a non-employee, filed a discrimination charge against a different employer," summary judgment was appropriate, as Plaintiff did not have a retaliation claim.

*Id.*

Here, the Court is presented with facts very similar to those in *Underwood*. Plaintiff testified during her deposition that her husband's involvement with the NAACP, as well as his former employment (from 2004-2006) with the defendant, is the basis of her retaliatory non-hiring claims against the Defendant. *See* R. Doc. 108-4, p. 39-40 (Joyce Johnson Richardson, Deposition Part I, p. 149, 153). Therefore, Plaintiff bases her retaliation claim on the protected conduct of her husband, a non-employee of the defendant.

However, like in *Underwood,* this Court finds that the instant action is distinguishable from *Thompson.* Plaintiff here asserts that her former employer, from whom she retired in 2006, retaliated against her, not her husband, although she concedes that she did not engage in the protected conduct. *Id.* In fact, it was her non-employee husband's alleged activity that she claims was protected, which is insufficient to satisfy the elements necessary to prove her Title VII third-party retaliation claim. *Thompson,* 131 S.Ct. at 867-70; *Underwood,* 518 Fed. App'x at 643. Therefore summary judgment is appropriate as Plaintiff does not have a retaliation claim.

### IV.   Conclusion

**IT IS ORDERED** that Defendant, Tangipahoa Parish School Board's ("Defendant") **Motion for Summary Judgment (R. Doc. 108)** is **GRANTED**.

New Orleans, Louisiana, this 13th day of March 2014

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**